Pamela Patterson, Bar No. 102859
ppattersonlaw@gmail.com
31878 Del Obispo St., #484
San Juan Capistrano, CA 92675
Telephone: (949) 690-3011
Facsimile: (949) 661-6818

Attorney for Plaintiff,
N.D., a minor child by and through her mother
PAMELA PATTERSON

FILED
2013 AUG 14  AM 10: 59

LODGED
2013 JUL 16  PM 3: 31

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

N.D., a minor child by and through her mother PAMELA PATTERSON

Plaintiff,

vs.

CALIFORNIA CHILDREN'S SERVICES and DEPARTMENT OF HEALTH CARE SERVICES,

Defendants

CASE NO.: SACV13-1055 JVS(RNBx)

**COMPLAINT**

## I.    PRELIMINARY STATEMENT

1.    This is an action for compensatory damages, injunctive, and mandamus relief against California Children's Services ("CCS") and Department of Health Care Services ("DHCS") as the agencies responsible for implementing and enforcing the California Children's Services program, which is part of the Medicare program. Under the Medicare statute and regulations, coverage is available for health care and therapy services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." This standard requires the evaluation for coverage on the basis of a beneficiary's unique condition and individual needs. CCS, however, imposes a covert rule of thumb

that operates as an additional and illegal condition of coverage and results in the termination, reduction, or denial of coverage for thousands of children in California who are CCS-eligible and Medicare beneficiaries annually.

2.     This additional condition of eligibility, which is usually implemented at the lower levels of CCS's administrative review process where the overwhelming majority of decisions are made, is referred to and implemented by one or more of several phrases, including that the beneficiary needs "consult/maintenance services only," has "plateaued," or is "chronic," "medically stable," or not improving.  CCS's policy is "if the child is not making progress in therapy, we cut it out."   However, it is what CCS does with the child, i.e., provides inadequate or no therapy, which ensures that the child does not make progress.  The shorthand term for this rule of thumb masquerading as a condition of coverage is the Improvement Standard.

3.     The Improvement Standard is not supported by the California Children's Services Act, Medicare statute or regulations. Because it has been implemented without notice-and-comment rulemaking and without publication in the Federal Register, beneficiaries have little or no understanding of its application and cannot know, and/or do not have the resources, to seek further review.  Despite numerous court decisions repudiating the Improvement Standard and dictating that each beneficiary's situation should be evaluated on an individualized basis, the Improvement Standard continues to be applied, especially by California Children's Services, DHCS, and employees of Medicare contractors and intermediaries who ignore the correct coverage standards.  The regular, on-going application of the Improvement Standard in this context amounts to a clandestine policy that is condoned and implemented by DHCS and CCS.

4.     The Improvement Standard operates as a covert condition of coverage that simultaneously deprives beneficiaries of coverage to which they are entitled while effectively denying them the ability to correct its application through the administrative hearing process, as the Administrative Law Judges illegally apply the same standard, which is what occurred in the present case by ALJ Nelson.   ALJ Nelson thus violated the

-2-
**COMPLAINT**

Medicare statute and regulations, the Administrative Procedure Act's and the Medicare statute's requirements for notice-and-comment rulemaking, the Freedom of Information Act's requirement of publication, and the Due Process Clause of the Fifth Amendment.

## II. JURISDICTION AND VENUE

5.     This action arises under the Individuals with Disabilities Education Act [20 U.S.C. § 1400 *et seq.*] ("IDEA")[1] and pendent state law as hereafter more fully appear. This court has jurisdiction under and by virtue of 20 U.S.C. § 1400 *et seq.*; 42 U.S.C. § 1983 and 34 C.F.R. § 300 *et seq.*   and is conferred on this court by 28 U.S.C. §§ 1331 and 1361 and by 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. §§ 1395ff(b)(1)(A) and 1395w22(g)(5). Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 405(g).  Medicare Parts A and B, 223(b)

## III. PARTIES

6.     Plaintiff N.D., a minor child, was born in 1998 and is a resident of San Juan Capistrano, California.  At all relevant times she has been eligible for CCS and Medicare Parts A and B.  A decision by an administrative law judge, finalized on April 21, 2013, denied her coverage for therapy services and equipment prescribed by her CCS-paneled orthopedist, Dr. Afshin Aminian.  That decision was affirmed by the Chief ALJ of the Office of Administrative Hearings & Appeals in a decision finalized on April 21, 2013.

7.     Plaintiff   PAMELA PATTERSON ("Mother") is the mother of Plaintiff N.D. ("Student").  At all times relevant to this complaint, Mother resided in the State of California, County of Orange.  At times relevant to this complaint, Student was a minor child residing in the State of California, County of Orange with his parents.

8.     Student is a child with a disability within the meaning of that term as defined under 20 U.S.C. § 1401(3)(A)(i) and is a child with exceptional needs within the meaning of that term as defined in Cal. Educ. Code § 56026, and therefore is entitled to receive

---

[1] The IDEA was reauthorized in 2004 as the Individuals with Disabilities Education Improvement Act ("IDEIA").  For simplicity and consistency with prior case law, this Complaint will refer to the statutory scheme as the IDEA.

**COMPLAINT**

special education and related services more specifically set forth in Cal. Health & Safety Code § 123800, et seq., and Cal. Govt. Code § 7570 et seq.

9.     Defendants CALIFORNIA CHILDRENS SERVICES ("CCS") the DEPARTMENT OF HEALTH CARE SERVICES ("DHCS") are governmental agencies located within the County of Orange, State of California, and conducting business therein.

10.     Pursuant to Federal Law, disputes under the IDEA are handled in an administrative "due process" hearing. 20 U.S.C. § 1415(f).

11.     A party aggrieved by the hearing officer's determination in a due process hearing may appeal such decision to federal district court.  20 U.S.C. § 1415(i)(2)(A).

## V. LEGAL FRAMEWORK

### A. Overview

12.     Medicare, which is codified as Title XVIII of the Social Security Act, is the federally funded and administered program of health insurance for those who are 65 and over or are disabled. Under Part A of Medicare, for which eligibility is automatic for recipients of Social Security old age and disability benefits (Title II of the Social Security Act), beneficiaries are entitled to coverage for hospital, skilled nursing facility care, home health care, and hospice services.  Part B of Medicare establishes a voluntary program of supplemental medical insurance providing coverage for physicians, nurse practitioners, home health, **physical, speech and occupational therapy**, diagnostic services, and **durable medical equipment**.  Under Part C (the Medicare Advantage program), beneficiaries may opt to enroll in a managed care plan in lieu of the traditional approach in "original Medicare" as provided in Parts A and B.

13.     Medicare is implemented at the state level in California for children with disabilities through the special education and related services under the IDEA.  With respect to certain children who have eligible conditions, as in the case of Plaintiff N.D., related services are provided in part by California Children's Services ("CCS") pursuant

to the California Children's Services Act, Cal. Health & Safety Code Section 123840, et seq.

14.     The threshold for Medicare coverage is its medical necessity requirement, which states in applicable part that "no payment may be made ... for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A).  The California Children's Services Act, *ibid*, mandates that Defendant CCS provide all medically necessary therapies, treatments, services, equipment and related transportation to children with CCS-eligible conditions (Cal. H&S § 123840).  "Medically necessary occupational therapy or physical therapy services" are those services directed at achieving or preventing further loss of functional skills, or reducing the incidence and severity of physical disability, Title 2 California Code of Regulations § 60300.

15.     Other than the reference in the last clause of subsection 1395y(a)(1)(A) to coverage for "improv[ing] the functioning of a malformed body member," the Medicare statute does not state or imply at any point that improvement, or any comparable phraseology, is a condition of coverage.

### B. The Regulatory Requirements

16.     The relevant regulation for coverage makes it clear that the Improvement Standard does not determine coverage: "The restoration potential of a patient is not the deciding factor in determining whether skilled services are needed. Even if full recovery or medical improvement is not possible, a patient may need skilled services to prevent further deterioration or preserve current capabilities." 42 C.F.R. § 409.32(c).

17.     The regulations further dictate, in defining the "reasonable and necessary" standard, that the individual's "unique" situation is the cornerstone for coverage. The home health regulation states in part: "The intermediary's decision on whether care is reasonable and necessary is based on information ... concerning the unique medical condition of the individual beneficiary." 42 C.F.R. § 409.44(a).

18.    The home health regulations related to physical, speech, and occupational therapy provide for Medicare coverage for services to restore or to maintain function. 42 C.F.R. § 409.44(c)(2).

19.    Many of CMS' manual provisions support and reinforce the regulatory prohibition against an Improvement Standard as a condition of coverage.  The Medicare Benefit Policy Manual (MBPM) states that the determination of whether a skilled service is reasonable and necessary cannot be based on "rules of thumb," but instead requires assessment of the particular individual's need for care.  Internet Only Manual (10M) 10002, MBPM, ch. 7, §§ 20.3, 40.2. The Manual reiterates the regulatory language requiring assessment "of the beneficiary's unique condition and individual needs" and adds that "skilled care may, depending on the unique condition of the patient, continue to be necessary for patients whose condition is stable." *Id.,* § 40.1.1.

20.    Lower level decision-makers, however, rarely follow these regulatory and Manual prohibitions against the Improvement Standard.  Instead, they rely on policy provisions, Medicare contractor instructions, and Local Coverage Determinations (LCOs).  LCDs are created by individual contractors to provide guidance in those jurisdictions in which they operate.  LCDs often employ language that enforces an Improvement Standard. *See, e.g.,* LCD **10** # L23604 ("There must be an expectation that the condition will improve significantly in a reasonable and generally predictable period of time ...."); LCD **10** # L340 ("The documentation supports the expectation that the beneficiary's condition will improve significantly in a reasonable and generally predictable period of time.").  As a rule, lower level decision-makers will rely on more restrictive internal guidelines, policies, and LCDs rather than on contrary regulations or Manual provisions.   LCDs are not binding on administrative law judges.

### C. The Administrative Review Process

21.    Under original Medicare (Parts A and B), a beneficiary who has been informed by the provider that the services at issue are not expected to be covered must obtain an "initial determination" from the Medicare contractor. This formal statement of

-6-
**COMPLAINT**

non-coverage is provided as part of the Medicare Summary Notice (MSN), which the contractors issue on a quarterly basis.

22.     Under the standard review process, the beneficiary requests review of the MSN "initial determination" by filing for a redetermination by the Medicare contractor. If the decision remains adverse, the beneficiary may seek reconsideration from the Qualified Independent Contractor (QIC).

23.     Under the expedited review process that is available for discharge from a SNF, home health care, or a hospice, the provider must generally give notice two days before the discharge or termination occurs. The beneficiary has until noon of the next calendar day to request an expedited determination by the Quality Improvement Organization (QIO). If the QIO upholds the provider's decision, the beneficiary has until noon of the next calendar day to seek reconsideration from the QIC.

24.     The remaining steps are the same for both standard and expedited review. These include a de novo review by an administrative law judge (ALJ) if the amount in controversy is at least $130 in 2010 and 2011 and an on-the-record review of the ALJ's decision by the Medicare Appeals Council (MAC), with the same amounts in controversy.  Review in federal district court is then available for cases in which the amount in controversy is at least $1,300 in 2011.

**D. Application of the Improvement Standard Below the ALJ Level**

25.     Upon information and belief, it is the standard practice of CCS, CCS-paneled physicians, providers, contractors, QIOs, QICs, and IREs to apply LCDs and internal guidelines and policies that establish the Improvement Standard as a rule of thumb on which Medicare coverage is conditioned, in disregard of the regulatory and manual provisions that require a coverage determination to be based on the beneficiary's individual condition and needs.  This approach holds true for decisions made under each of Parts A, B, and C.

26.     The application of the Improvement Standard at the lower levels of review imposes an additional condition of eligibility.  It has the twofold effect of denying

**COMPLAINT**

coverage to beneficiaries who are entitled to it and discouraging them from seeking review because the Improvement Standard, as stated, appears to be impossible to overcome.

27.    In 2008, only about 1.7% of all Part A denied claims and 1.8% of all Part B denied claims were appealed to the next level, the redetermination level. eMS, "Fact Sheet: Original Medicare (Fee-For-Service) Appeals Data - 2008," at 2, available at cms.gov/OrgMedFFSAppealslDownloads/Feeshet2008.pdf. Only about 0.5% of Part A denied claims and 0.22% of Part B denied claims were appealed to the reconsideration level. *Id.* at 6. In FY 2008, the number of all Medicare appeals taken to ALJs was 32,960, which included 185,665 claims. Office of Medicare Hearings and Appeals website, at http://www.hhs.gov/omha/resources/index.html. Estimating and extrapolating from these figures suggest that the percentage of adverse initial denials that reach the ALJ level is extremely small, probably in the range of 0.02% to 0.05%. Furthermore, the percentage of adverse initial determinations based on the Improvement Standard is probably lower still than the overall percentage because beneficiaries are less likely to appeal when the Improvement Standard is applied to them. They generally do not appeal because the Improvement Standard, as it is presented to them, suggests that they cannot succeed on appeal. Accordingly, on information and belief, only a minuscule percentage of beneficiaries who are denied based on the Improvement Standard appeal the denial to the ALJ level.

28.    Upon information and belief, the Secretary is aware that the Improvement Standard is consistently imposed by her Medicare contractors but has not taken action to require that the proper policies be carried out. This refusal to correct the situation has occurred despite numerous federal court decisions repudiating the Improvement Standard as a condition of coverage.

## VI. FACTUAL STATEMENT

INTRODUCTION

-8-
COMPLAINT

29.    Plaintiffs hereby incorporate and re-allege Paragraphs 1-28 above and incorporate the same as though fully set forth herein.

30.    N.D., a minor child, has the CCS-eligible condition arthrogryposis, which is a uniquely orthopedic condition.  Natalie's CCS-paneled orthopedist, Dr. Aminian, has been authorized to treat Natalie since November 17, 2004, and has been the only State-authorized physician to treat and manage Natalie's CCS-eligible condition since that time.  It is undisputed that in November of 2009, Dr. Aminian was Natalie's treating orthopedic surgeon.   ALJ Ward took official notice in the second fair hearing that Natalie's CCS-eligible condition was arthrogryposis, that it was a uniquely orthopedic condition, and that Dr. Aminian was the title 2, California Code of Regulations, section 60323, specialist, managing her care.  (Exh. Drac-1, attached herein and incorporated by reference.)

31.    In 2004 CCS MTU stopped providing Natalie with active therapy based on their policy that, if a child does not make progress with therapy they discontinue it.  (CCS Exh. 12B; CCS Exh. 12 F.)  However, it was because of the inadequacy of the services provided, that Natalie deteriorated.  Due to CCS' policy of treating only those youths who show "progress" in the 30 minute treatment sessions, once Natalie started to deteriorate, CCS stopped active treatment altogether.  In September of 2009, concerned about the marked deterioration, mother paid out of pocket for private therapy at SKY Pediatric Therapy, where she was was treated by Ms. Gilmour (physical therapist).  Natalie's mother simultaneously enrolled Natalie in hippotherapy at the Shea Center (a therapy center).

32.    Yvette Gilmour, Natalie's treating physical therapist, recommended that Natalie be provided with the following equipment so that Natalie's family and caregiver could be allowed to effectively implement a home program for Natalie:  Universal Exercise Unit and Accessories, Seated "Tomato" Scooter, Vibration Board), Massage-type table, exercise mat, bench, large physio-ball, peanut type ball, 1/2 bolster, bar, and hat/warm packs ("herein Massage table, etc.")  (CCS Exh. 5a; CCS Exh. 9d.)  Dr.

Aminian, the CCS doctor, made the very same recommendations. (CCS Exh. 5a, p. 2.) In a series of NOAs dated March 2, 2012, CCS unlawfully rejected its own recommendation from Dr. Aminian, without legal cause or authority, and subsequently failed to implement Dr. Aminian's recommendation, which should have been written into Natalie's IEP (Independent Education Program). Dr. Aminian has repeatedly recommended that Natalie continue with the therapy regime from SKY/SHEA, and that she be given the medically necessary equipment enumerate above.    (CCS Exh. 6, p. 23.)

33.    It is not disputed that Dr. Aminian was authorized to act on behalf of CCS at the time that he made the recommendations supporting therapy at SKY, and that he was the specialist that had been authorized since 2004 to manage Natalie's CCS-eligible condition, and to determine her therapy plan. CCS, without citing any relevant legal authority to support their actions, denied the services and equipment authorized by Dr. Aminian, reasoning that the requested service was not a CCS benefit, despite regulation and policy to the contrary. After the recommendation to have Natalie's therapy transferred to SKY and Shea was denied, along with the request to have CCS provide medically necessary equipment, Mother filed for fair hearings against CCS-because she was left with no other recourse, as the recommendations were not implemented into Natalie's IEP pursuant to the governing regulations, and CCS refused to provide Natalie with the medically necessary equipment and services.

## STATEMENT OF THE CASE

NATURE OF THE ACTION AND RELIEF SOUGHT

34.    Plaintiffs hereby incorporate and re-allege Paragraphs 1-33 above and incorporate the same as though fully set forth herein.

35.    This is an action challenging the decision of an administrative agency, "California Children's Services" (CCS). The CCS program is administered as a partnership between county health departments and The Department.1 Ms. N. D. alleges

that it was improper for CCS and The Department to ignore its own recommendations, provided by their specialist, Dr. Aminian, Natalie's CCS-paneled and authorized orthopedist since 2004, and to deny therapy and equipment to Natalie, and to proceed with the FAIR hearing appeal and subsequent proceedings, in violation of California Code of Regulations, title 2, §60323.  Pursuant to §§42140 (a), and 60323, CCS was bound to implement the therapy/equipment recommendations of Dr. Aminian.  Ms. Dracub seeks implementation of Dr. Aminian's therapy plan, and reimbursement for all sums paid to implement that plan.

## ISSUES BEFORE THE TRIBUNAL

a. Whether CCS' actions in failing to follow Aminian's recommendations were violative of statutory law and procedures;

b. Whether CCS acted lawfully when it issued the NOAs numbered (1)

5675852-2012 (denying request for Universal Exercise Unit and Accessories);

(2) 5675913-2012 (denying request for Seated "Tomato" Scooter); (3)

iii

1 California Department of Healthcare Services, November 25, 2012, http://www.dhcs.ca.gov/services/ccs/pages/programoverview.aspx

5675929-2012 (denying request for Vibration Board); (4) 5676063-2012 (denying request for a Massage-type table, exercise mat, bench, large physio-ball, peanut type ball, 1/2 bolster, bar, and hat/warm packs ("herein Massage table, etc.") denying the equipment, and therapy recommendations made by Dr.

Aminian, as they were medically necessary.

**ARGUMENT**

**I. BECAUSE PETITIONER/APPELLANT DID NOT HAVE A DISPUTE WITH THE CCS-AUTHORIZED THERAPY PLAN, THE CCS-PANELED SPECIALIST'S RECOMMENDATIONS SHOULD HAVE BEEN IMPLEMENTED; CCS' ACTIONS IN FAILING TO DO SO CONSTITUTE A FAILURE TO FOLLOW STATUTORY PROCEDURES**

    **36.**    Plaintiffs hereby incorporate and re-allege Paragraphs 1-35 above and incorporate the same as though fully set forth herein.

    **37.**    Government Code § 7575 (c), gives Dr. Aminian the authority to prescribe medically necessary services for Natalie.   This code section states in relevant part:

Notwithstanding any other provision of law, the State Department of Health Services, or any designated local agency administering the California Children's Services, shall be responsible for the provision of medically necessary occupational therapy and physical therapy...The department shall provide the service directly or by… contracting with another... qualified individual.

    **38.**    Further, California Code of Regulations, title 2, § 60323 provides in pertinent part:

(d) Medically necessary therapy services are provided at a level dependent on the pupil's physical and functional status as determined and prescribed by the CCS paneled physician of the specialty appropriate for treating the pupil's Medical Therapy Program eligible condition and who has been authorized by the program to supervise the pupil's Medical Therapy Program eligible condition.

    **39.**    Dr. Aminian is the only doctor that fits this description.  Dr. Aminian was the only doctor qualified and authorized to manage Natalie's care, thus his opinion was

binding on CCS, as stated in § 60323 above.  CCS ignored both his opinion and the law, in denying the requests for therapy and equipment.

40.    In disregarding Aminian's opinion, CCS proceeded as though there were an official dispute between the CCS opinion, and appellant.  Title 22, of the California Code of Regulations, §42140 (a), governs disputes between CCS and clients like Natalie.

According to §42140 (a):

A CCS applicant or client who disagrees with a decision of the designated CCS agency has the right to appeal that decision except when the service under dispute has been ordered or terminated by a CCS physician with responsibility for the medical supervision of the client. If the client or person legally authorized to decide for the client disagrees with the CCS physician, the client shall be provided with names of three expert physicians from whom the client will choose one, who will evaluate the child at CCS expense. The opinion of the expert physician shall be final.   [emphasis added]

41.    If appellant disagreed with the CCS physician, then it would have been proper for CCS to provide Natalie with the "names of three expert physicians," and Natalie could have chosen an outside, non-CCS expert to render an opinion, and resolve any conflict between Dr. Aminian and Natalie/Mother, with regard to the receipt of therapy at Shea/ SKY.

42.    The reason for these rules is very simple: To ensure that parents would not be silenced by the very forces that had once excluded disabled children from public education, Congress granted parents the right to seek review of their child's IEP, and/or decisions made by the IEP team.  (See generally Laura Rothstein, Rights of Physically Handicapped Persons §§ 2.23-.31 (1984).)  When a disagreement arises between parents and the public education entity, the parents of a child with a disabling condition may seek a hearing before a hearing officer whose personal and professional interests do not conflict with his or her ability to make an impartial decision. (§ 1415(b)(2); 34 C.F.R. §§

300.506-.507 (1991).)  At the conclusion of the administrative review process, the parties may file a civil suit in federal district court or state court. (§ 1415(e)(2). )

43.    In the case at hand there was no dispute between the parents of Natalie and the IEP team.   Dr. Aminian, an agent of CCS, made recommendations for therapy that were perfectly in line with Natalie and her mother's wishes.  CCS disregarded its own expert, Dr. Aminian, and refused to include Aminian's recommendations in Natalie's IEP.  (CCS Exh. 1; CCS Exh. 2; CCS Exh. 3.)  If CCS had a dispute with a recommendation from one of its agents, it should have acted pursuant to interagency dispute procedures.  Disagreement between CSS, the Department, and/or any of its agents regarding responsibility for initiating services, payment for services, and/or the implementation of services, should be resolved through interagency dispute procedures, pursuant to the California Government Code  § 7585.  However, when an interagency dispute arises, the IEP, IEP referrals, and CCS assessments from IEP experts like Dr. Aminian may not simply be tossed out at will-as they were in the case at hand.  Rather, state agencies are bound to adhere to IEP rules, regulations, and guidelines.

44.    Dr. Aminian's assessments, recommendations and equipment prescriptions beginning in November 2009, resulted in a dramatic change in the therapy treatment plan of Natalie's IEP.  Government Code § 7575 (c), which states in relevant part:

"Notwithstanding any other provision of law, the State Department of Health Services, or any designated local agency administering the California Children's Services, shall be responsible for the provision of medically necessary occupational therapy and physical therapy...The department shall provide the service ...by contracting with another... qualified individual."

45.    This code section gives Dr. Aminian the authority to prescribe the changes that he made to Natalie's IEP in appointing Shea Center and SKY to provide physical therapy for Natalie, and in recommending that Natalie be given the equipment identified

in the NOAs for home use. Further, California Code of Regulation title 2, § 60325(c) mandates that CCS shall notify the IEP team and parent in writing within 5 days of a decision to increase, decrease, change the type of intervention, or discontinue services for a pupil receiving medical therapy services.  In the case at hand this was not done. Instead, without citing to any authority CCS simply rejected the expert findings of Aminian in violation of California Code of Regulation title 2, § 60325(c).

46.    CCS failed to notify the IEP team of Dr. Aminian's dramatic change in Natalie's therapy plan, and neither CCS nor the school district complied with the law requiring Dr. Aminian's assessment and therapy plan to be written into the IEP: "(f) When the IEP team determines that occupational therapy or physical therapy services are necessary for the pupil to benefit from the special education program, goals and objectives relating to the activities identified in the assessment reports shall be written into the IEP." Here, CCS was required to adopt Dr. Aminian's assessment, as  the only party that could have objected to Dr. Aminian's plan was Natalie's mother.

47.    In Sierra Club v. State Board of Forestry, (1994) 7 Cal. 4th 1215, 1236, the California Supreme Court held that if an administrative board fails to comply with the mandatory procedures governing its actions, the failure to follow the law is presumptively prejudicial and the decision must be set aside.  (See also, Schoen v. California Department of Forestry & Fire, (1997) 58 Cal. App. 4th 556, 565 [an administrative agency's failure to follow mandatory procedures is a presumptively prejudicial abuse of discretion that requires reversal of the agency's decision].)  There has been no legal authority presented at the FAIR hearings to support the notion that CCS had the right to disregard the governing law, and ignore Aminian's findings and recommendations.  CCS was required to adopt Dr. Aminian's assessment, because according to §42140 (a), the only party that could have objected to Dr. Aminian's plan was Natalie's mother.  Since Natalie's mother has never objected to Dr. Aminian's therapy plan, as a matter of law and equity, Dr. Aminian's recommendations should have been implemented.  (Id; Cal. Code regs, tit. 22, §42140 (a).)  As stated, an abuse of

-15-
**COMPLAINT**

discretion in administrative proceeding is established if the administrative agency has not proceeded in a manner required by law. (Le Strange v. Berkley (1962) 210 Cal. App. 2d 313.) Because CCS failed to follow its own procedures, as well as the black letter law, CCS' decision should be reversed, and Dr. Aminian's therapy plan should be implemented. (Cal. Code Civ. Proc. § 1094.5.)

## II. THE EQUIPMENT AND TREATMENT RECOMMENDED BY DR. AMINIAN ARE MEDICALLY NECESSARY

48.     Plaintiffs hereby incorporate and re-allege Paragraphs 1-47 above and incorporate the same as though fully set forth herein.

49.     The stated goal of CCS is to provide disabled children the opportunity to achieve a maximum level of physical, mental, social, education, and vocational functions. CCS clients are entitled, pursuant to California Health and Safety Code, § 123840, to receive services which include physical therapy, occupational therapy, and special treatment. The only restriction placed on these services is that they convey a medically necessary benefit. (see also Cal. Code Regs., tit. 22, § 41452.)

50.     According to Title 22 of the California Code of Regulations, §41452, "Medically necessary benefits" are those services, equipment, tests, and drugs which are required to meet the medical needs of the client's CCS-eligible medical condition. Further, "Medically necessary occupational therapy or physical therapy services" are those services directed at achieving or preventing further loss of functional skills, or reducing the incidence and severity of physical disability. (Cal. Code Regs. tit. 2, § 603002.)     Therapy and equipment that is having a curative effect, such as that recommended by SKY, is meeting Natalie's medical needs, and is therefore, as explained in Title 2, § 60300, a medical necessity.     CCS presented no evidence for its findings to the contrary-other than alluding to budgetary concerns, and the findings of CCS staff other than the treating doctor that the equipment was not necessary-no findings were

made as to the 2 see Cal. Code Regs. tit. 2, § 60300 (r) which defines "Therapy plan" as the written recommendations for medically necessary occupational therapy or physical therapy services based on the results of the therapy assessment and evaluation and is to be included in the individualized education program or individualized family service plan.

therapy that mother requested in her letter of April 2, 2012, challenging the CCS decision to deny equipment and treatment. (CCS Exh. 1, p.2.)   As such, CCS has not presented any reliable evidence that the equipment and services requested by Dr. Aminian are anything other than medically necessary.  Further, CCS has not offered one single legal justification for the denial of said services.

## CONCLUSION

For the reasons set forth above N.D. objects to these proceedings as procedurally improper, and in the alternative submit that the recommendations made by Dr. Aminian constitute a medical necessity and should therefore be implemented.

## PRAYER

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

1)  That ALJ Nelson's decision be overturned on all issues.

2)  That CCS and DHCS be ordered to reimburse Mother for Student's placement at all of the providers prescribed by Dr. Aminian for all related services;

3)  That CCS and DHCS be ordered to procure all needed equipment, as prescribed by Dr. Aminian, to meet Student's medically need with respect to related services;

4)  That, upon the successful overturning of ALJ Nelson's decision, that Mother be awarded her reasonable attorneys fees and costs as a prevailing party in that case;

5)   That, upon the successful prosecution of this matter, that Mother be awarded her reasonable attorneys fees and costs as a prevailing party in this case;

6)   For such other and further relief as the Court deems just and proper.

DATED:    July 15, 2013

By: _____

Pamela Patterson
Attorney for Plaintiff N.D., a minor child

-18-
**COMPLAINT**

**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| N.D., a minor child, by and through her guardian ad litem, Pamela Patterson | CALIFORNIA CHILDREN'S SERVICES, DEPARTMENT OF HEALTH CARE SERVICES |

| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|
| PAMELA PATTERSON, Bar No. 102859 31878 Del Obispo St., #118-484 San Juan Capistrano, CA 92675 Tel: (949) 690-3011 Fax: (949) 661-6818 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☒ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

due process hearing

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   **MONEY DEMANDED IN COMPLAINT:** $ 100,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Individuals with Disabilities Education Act [20 U.S.C. § 1400 et seq.] ("IDEA") and pendent state law as hereafter more fully appear. This court has jurisdiction under and by virtue of 20 U.S.C. § 1400 et seq.; 42 U.S.C. § 1983 and 34 C.F.R. § 300 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☒ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: **SACV13-1055** JVS(RNBx)

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☒ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ORANGE COUNTY | |

***Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _[signature]_   DATE: July 15, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____James V. Selna_____ and the assigned Magistrate Judge is _____Robert N. Block_____ .

The case number on all documents filed with the Court should read as follows:

## SACV13-01055 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 14, 2013_____
Date

By ___Lori Wagers_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| ☐ Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | ☒ Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | ☐ Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES